No. 23-10171

In the

# United States Court of Appeals
## for the Eleventh Circuit

HAVANA DOCKS CORPORATION,

*Plaintiff-Appellees*,

v.

ROYAL CARIBBEAN CRUISES, LTD., ET AL.,

*Defendants-Appellants*.

On Appeal from the United States District Court,
for the Southern District of Florida, No. 1:19-cv-23591-BB,
Hon. Beth Bloom, *United States District Judge*

**PROPOSED BRIEF OF AMICUS CURIAE
CRUISE LINES INTERNATIONAL ASSOCIATION
SUPPORTING DEFENDANTS-APPELLANTS AND REVERSAL**

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Steven Marcus
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Timothy G. Nelson
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
New York, NY 10001

*Counsel for Amicus Curiae Cruise Lines International Association*

*Havana Docks Corp. v. Royal Caribbean Ltd.*, No. 23-10171 (11th Cir.)

## CERTIFICATE OF INTERESTED PERSONS
## AND CORPORATE DISCLOSURE STATEMENT

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, Amicus Curiae Cruise Lines International Association (CLIA) makes the following disclosures: CLIA is a non-profit corporation organized under the laws of the District of Columbia. CLIA operates under 501(c)(6) of the Internal Revenue Code. It has no parent corporation and, as it has no stock, no publicly held company owns 10% or more of its stock.

Pursuant to Federal Rule of Appellate Procedure 26.1 and Eleventh Circuit Rule 26.1-1, CLIA also certifies that, in addition to the persons and entities named in the parties' certificates of interested persons, the following individual or entities have or may have an interest in the outcome of this case:

- Akerman, LLP, *Counsel for Defendant-Appellant Carnival Corporation*

- Baldridge, James Douglas, *Counsel for Defendants-Appellants MSC Cruises S.A. CO.; MSC Cruises (USA), Inc.; MSC Cruises, S.A.*

- Balmori, Daniel, *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Black, Hillary S., *Counsel for Defendant-Appellant Carnival Corporation*

- Bloom, Honorable Beth, *United States District Judge*

*Havana Docks Corp. v. Royal Caribbean Ltd.*, No. 23-10171 (11th Cir.)

- Bohrer, Sanford L., *Counsel for Defendant-Appellant Royal Caribbean Cruises, Ltd.*

- Boies Schiller & Flexner, LLP, *Counsel for Defendant-Appellant Carnival Corporation*

- Burck, William Anthony, *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Carnival Corporation (CCL), *a foreign corporation doing business as Carnival Cruise Lines, Defendant-Appellant*

- Casey, Stephanie A., *Counsel for Plaintiff-Appellee*

- Clement & Murphy, PLLC, *Counsel for Defendant-Appellant Royal Caribbean Cruises, Ltd.*

- Clement, Paul D., *Counsel for Defendant-Appellant Royal Caribbean Cruises, Ltd.*

- Colson Hicks Eidson, *Counsel for Plaintiff-Appellee*

- Cooper, Jonathan Gordon, *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Cruise Lines International Association, *Amicus Curiae in the Eleventh Circuit and District Court proceedings*

- Dvoretzky, Shay, *Counsel for Amicus Curiae Cruise Lines International Association in the Eleventh Circuit*

- Elayan-Martinez, Aziza F., *Counsel for Plaintiff-Appellee*

- Ellis George Cipollone O'Brien Annaguey, LLP, *Counsel for Plaintiff-Appellee*

- Foreman Friedman, PA, *Counsel for Amicus Curiae Cruise Lines International Association in the District Court*

*Havana Docks Corp. v. Royal Caribbean Ltd.*, No. 23-10171 (11th Cir.)

- Fowler, George J., III, *Counsel for Defendant-Appellant Carnival Corporation*

- Freyre, Pedro A., *Counsel for Defendant-Appellant Carnival Corporation*

- Friedman, Darren Wayne, *Counsel for Amicus Curiae Cruise Lines International Association in the District Court*

- Gayles, Honorable Darrin P., *United States District Judge*

- Goodman, Honorable Jonathan, *United States Magistrate Judge*

- Gray, Corey Patrick, *Counsel for Defendant-Appellant Carnival Corporation*

- Harper, Chadwick J., *Counsel for Defendant-Appellant Royal Caribbean Cruises, Ltd.*

- Harvard Law School, *Counsel for Amicus Curiae Cruise Lines International Association in the District Court*

- Havana Docks Corporation, *Plaintiff-Appellee*

- Hernacki, Andrew T., *Counsel for Defendants-Appellants MSC Cruises S.A. CO.; MSC Cruises (USA), Inc.; MSC Cruises, S.A.*

- Hogan Lovells US, LLP, *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Holland & Knight LLP, *Counsel for Defendant-Appellant Royal Caribbean Cruises, Ltd. and Defendant-Appellant Carnival Corporation*

- Jones Walker, LLP, *Counsel for Defendant-Appellant Carnival Corporation*

- Klingler, Richard Douglas, *Counsel for Plaintiff-Appellee*

- Kroeger, Thomas A., *Counsel for Plaintiff-Appellee*

*Havana Docks Corp. v. Royal Caribbean Ltd.*, No. 23-10171 (11th Cir.)

- Landau, Christopher, *Counsel for Plaintiff-Appellee*

- Li, Vincent, *Counsel for Plaintiff-Appellee*

- Lindsay, Alvin Francis, III, *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Lipshultz, Zachary A., *Counsel for Plaintiff-Appellee*

- Lipshutz, Brian M., *Counsel for Defendant-Appellant Carnival Corporation*

- Llamas, Luis Emilio, *Counsel for Defendant-Appellant Carnival Corporation*

- Loeb, Robert, *Counsel for Defendants-Appellants MSC Cruises S.A. CO.; MSC Cruises (USA), Inc.; MSC Cruises, S.A.*

- Lorenzo, Richard C., *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Louis, Honorable Lauren Fleischer, *United States Magistrate Judge*

- Lutz, Zachary P., *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Marcus, Steven, *Counsel for Amicus Curiae Cruise Lines International Association in the Eleventh Circuit*

- Margol & Margol, *Counsel for Plaintiff-Appellee*

- Margol, Rodney S., *Counsel for Plaintiff-Appellee*

- Martinez, Honorable Jose E., *United States District Judge*

- Martinez, Roberto, *Counsel for Plaintiff-Appellee*

- Massey & Gail LLP, *Counsel for Amicus Curiae Cruise Lines International Association in the District Court*

*Havana Docks Corp. v. Royal Caribbean Ltd.*, No. 23-10171 (11th Cir.)

- Massey, Jonathan S., *Counsel for Amicus Curiae Cruise Lines International Association in the District Court*

- McAliley, Honorable Chris M., *United States Magistrate Judge*

- Michel, Christopher, *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Moriceau, Alisha, *Counsel for Defendant-Appellant Carnival Corporation*

- MSC Cruises S.A. CO., *Defendant-Appellant*

- MSC Cruises (USA), Inc., *Defendant-Appellant*

- MSC Cruises, S.A., *Defendant-Appellant*

- Munyan, Katherine, *Counsel for Defendants-Appellants MSC Cruises S.A. CO.; MSC Cruises (USA), Inc.; MSC Cruises, S.A.*

- Nelson, Timothy G., *Counsel for Amicus Curiae Cruise Lines International Association in the Eleventh Circuit*

- Nemeroff, Justin B., *Counsel for Defendants-Appellants MSC Cruises S.A. CO.; MSC Cruises (USA), Inc.; MSC Cruises, S.A.*

- Norwegian Cruise Line Holdings, Ltd., *Defendant-Appellant*

- Oliu, Pascual A., *Counsel for Defendant-Appellant Carnival Corporation*

- Orrick Herrington & Sutcliffe, LLP, *Counsel for Defendants-Appellants MSC Cruises S.A. CO.; MSC Cruises (USA), Inc.; MSC Cruises, S.A.*

- Otazo-Reyes, Honorable Alicia M., *United States Magistrate Judge*

- Paul, Weiss, Rifkind, Wharton & Garrison LLP, *Counsel for Defendant-Appellant Carnival Corporation*

*Havana Docks Corp. v. Royal Caribbean Ltd.*, No. 23-10171 (11th Cir.)

- Pegg, Allen P., *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Ponce, Scott D., *Counsel for Defendant-Appellant Royal Caribbean Cruises, Ltd. and Defendant-Appellant Carnival Corporation*

- Quinn Emanuel Urquhart & Sullivan, LLP, *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Rider-Longmaid, Parker, *Counsel for Amicus Curiae Cruise Lines International Association in the Eleventh Circuit*

- Rosenkranz, E. Joshua, *Counsel for Defendants-Appellants MSC Cruises S.A. CO.; MSC Cruises (USA), Inc.; MSC Cruises, S.A.*

- Rowen, Matthew D., *Counsel for Defendant-Appellant Royal Caribbean Cruises, Ltd.*

- Royal Caribbean Cruises, Ltd., *Defendant-Appellant*

- Saladrigas, Caitlin F., *Counsel for Defendant-Appellant Royal Caribbean Cruises, Ltd.*

- Schultz, Meredith L., *Counsel for Defendant-Appellant Carnival Corporation*

- Shaffer, Derek L., *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Shanmugam, Kannon K., *Counsel for Defendant-Appellant Carnival Corporation*

- Singer, Stuart H., *Counsel for Defendant-Appellant Carnival Corporation*

- Skadden, Arps, Slate, Meagher & Flom, LLP, *Counsel for Amicus Curiae Cruise Lines International Association in the Eleventh Circuit*

*Havana Docks Corp. v. Royal Caribbean Ltd.*, No. 23-10171 (11th Cir.)

- Sullivan, Kathleen M., *Counsel for Defendant-Appellant Norwegian Cruise Line Holdings, Ltd.*

- Taormina, Benjamin A., *Counsel for Defendant-Appellant Royal Caribbean Cruises, Ltd.*

- Tribe, Laurence H., *Counsel for Amicus Curiae Cruise Lines International Association in the District Court*

- Venable, LLP, *Counsel for Defendants-Appellants MSC Cruises S.A. CO.; MSC Cruises (USA), Inc.; MSC Cruises, S.A.*

- Vice, Abigail Frisch, *Counsel for Defendant-Appellant Carnival Corporation*

- Wang, Jonas, *Counsel for Defendants-Appellants MSC Cruises S.A. CO.; MSC Cruises (USA), Inc.; MSC Cruises, S.A.*

# TABLE OF CONTENTS

**Page**

CERTIFICATE OF INTERESTED PERSONS AND CORPORATE
DISCLOSURE STATEMENT ............................................................... C-1

TABLE OF AUTHORITIES ..................................................................... ii

STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE .........1

ISSUE STATEMENT .................................................................................3

INTRODUCTION AND SUMMARY OF ARGUMENT ...................................3

ARGUMENT ..............................................................................................9

I.      The cruise industry followed the lead of the United States
        government in offering travel to Cuba. ........................................9

II.     The cruise excursions were intended to enhance contact with
        the Cuban people. ......................................................................13

        A.      The cruise itineraries were lawful travel under 31 C.F.R.
                § 515.565(b). .................................................................14

        B.      The district court's contrary conclusion rests on a flawed
                interpretation of the regulations. ...................................17

        C.      Left undisturbed, the district court's decision will chill the
                very travel to Cuba and interaction between Cubans and
                Americans that the regulations were intended to promote. .......18

III.    Cruise lines offered the same excursions offered by bar
        associations, universities, and professional groups. ..............................20

CONCLUSION ......................................................................................24

CERTIFICATE OF COMPLIANCE ............................................................25

CERTIFICATE OF SERVICE ..................................................................26

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Del Valle v. Trivago GMBH,*
    56 F.4th 1265 (11th Cir. 2022) ..............................................................1

*Garcia-Bengochea v. Carnival Corp.,*
    No. 1:19-CV-21725-JLK, 2020 WL 4590825
    (S.D. Fla. July 9, 2020) ........................................................................2

*Garcia-Bengochea v. Royal Caribbean Cruises, Ltd.,*
    No. 1:19-CV-23592-JLK, 2020 WL 6081658
    (S.D. Fla. Oct. 15, 2020) .....................................................................2

*United States v. Dish Network,*
    954 F.3d 970 (7th Cir. 2020) ...............................................................1

STATUTES

Cuban Liberty and Democratic Solidarity
    (LIBERTAD) Act, 22 U.S.C. §§ 6021 *et seq.*....................... 1, 2, 6, 7, 21

    22 U.S.C. § 6023(13)(B)(iii) .................................................................6

    22 U.S.C. § 6082(a)(1)(A) .....................................................................6

REGULATIONS

31 C.F.R. § 515.101 ....................................................................................4

31 C.F.R. § 515.565(b) ....................................................................... 14, 21

31 C.F.R. § 515.565(b) (2016) .......................................... 3, 4, 5, 8, 13, 17

31 C.F.R. § 515.565(b)(1) .........................................................................19

31 C.F.R. § 515.565(b)(1) (2016)..............................................................17

31 C.F.R. § 515.565(b)(2) (2016)..............................................................14

31 C.F.R. § 591.306 ....................................................................................4

80 Fed. Reg. 2291 (Jan. 16, 2015).........................................................4, 5

82 Fed. Reg. 51,998 (Nov. 9, 2017)....................................... 5, 6, 14, 15

# TABLE OF AUTHORITIES
### (continued)

**Page(s)**

OTHER AUTHORITIES

Colorado Bar Association, Journey to Cuba:
A Cross-Cultural Educational Exchange,
January 29 – February 2, 2017,
https://tinyurl.com/3b359p89 ................................................................ 21, 22

Contra Costa County Bar Association, Journey
to Cuba: A Cross-Cultural Educational Exchange,
February 18-24, 2017, https://tinyurl.com/5yww2x94 ..............................22

Julie Hirschfeld Davis, *U.S. Eases Restrictions on Travel to
Cuba and Bank Transactions*, N.Y. Times, March 15, 2016,
https://tinyurl.com/2fctw4vy ................................................................ 10, 11

Flying Physicians Association, Cuba: A Trip Back in Time,
https://tinyurl.com/5yst2u6f.................................................................. 22, 23

Fulbright Association, February 2017 Insight Tour
to Cuba, https://tinyurl.com/5dc2rpyx .......................................................22

Harvard Alumni Association, Travels 2017: ¡Cuba!,
https://tinyurl.com/bdenp5kn....................................................................21

Lewis and Clark College Alumni, Cuba: Art, Music, and
Cultural Creativity in the 21st Century, May 7-14, 2017,
https://tinyurl.com/hvwfh4wm ............................................................. 22, 23

Metropolitan Museum of Art in New York, The Art &
Architecture of Cuba: A New Year's Celebration,
https://tinyurl.com/22eak6kn................................................................ 22, 23

The Obama White House, *Charting a New Course on Cuba*,
https://tinyurl.com/mpmyywam.................................................................10

The Obama White House, *Presidential Policy Directive —
United States-Cuba Normalization* (Oct. 14, 2016),
https://tinyurl.com/4u69x6yc ........................................................... 5, 12, 20

## TABLE OF AUTHORITIES
(continued)

**Page(s)**

The Obama White House, *Remarks by President Obama and
    President Raul Castro of Cuba in a Joint Press Conference*
    (Mar. 21, 2016), https://tinyurl.com/3shrn78x ................................. 3, 4, 11

The Obama White House, *Remarks of President Barack Obama –
    State of the Union Address As Delivered* (Jan. 13, 2016),
    https://tinyurl.com/3x73zmzt.........................................................................10

The Obama White House, *Statement by the President
    on Cuba Policy Changes* (Dec. 17, 2014),
    https://tinyurl.com/9jfhzjds...........................................................................9

University of Wisconsin-Milwaukee Osher
    Lifelong Learning Institute, Cuba: Art, Culture,
    History, Politics and Economics,
    November 27-December 4, 2017,
    https://tinyurl.com/tr8a8vjz ................................................................. 22, 23

University of Pennsylvania Alumni Travel,
    Discover 2017: Explore Cuba, February 18-25,
    https://tinyurl.com/3j2hpu5u ......................................................................22

## STATEMENT OF IDENTITY AND INTEREST OF AMICUS CURIAE[1]

Cruise Lines International Association (CLIA) is a not-for-profit trade association whose membership includes dozens of cruise lines representing the vast majority of cruise capacity in North America. CLIA represents its members' interests before courts, Congress, the Executive Branch, and international tribunals. To that end, CLIA files amicus curiae briefs in cases, like this one, that raise issues of vital concern to the business of the cruise community. *See, e.g.*, *Del Valle v. Trivago GMBH*, No. 20-12407, 56 F.4th 1265 (11th Cir. 2022); *United States v. Dish Network*, No. 17-3111, 954 F.3d 970 (7th Cir. 2020).

CLIA has a strong interest in this case. In 2019, Defendants-Appellants, which are CLIA-member cruise lines, were named as defendants in lawsuits alleging a novel theory of liability under the Cuban Liberty and Democratic

---

[1] No counsel for a party authored this brief in whole or in part, and no entity or person, aside from amicus curiae, its members, and its counsel, made any monetary contribution intended to fund the preparation or submission of this brief. Defendants-Appellants are members of amicus curiae and are four of the six voting members of amicus curiae's Global Executive Committee, which voted to authorize and file this brief. All members of amicus curiae (including Defendants-Appellants) contribute annual dues to amicus curiae's General Fund to support the regular activities of amicus curiae. The preparation and submission of the brief was funded out of the General Fund.

Solidarity (LIBERTAD) Act, 22 U.S.C. §§ 6021 *et seq. See, e.g.*, *Garcia-Bengochea v. Royal Caribbean Cruises, Ltd.*, No. 1:19-CV-23592-JLK, 2020 WL 6081658 (S.D. Fla. Oct. 15, 2020); *Garcia-Bengochea v. Carnival Corp.*, No. 1:19-CV-21725-JLK, 2020 WL 4590825 (S.D. Fla. July 9, 2020). Defendants-Appellants operated their cruises in response to encouragement from the federal government, including President Obama, and followed the government's new lawful-travel regulations. But Plaintiff-Appellee, Havana Docks, sought massive damages because, it alleged, the cruise lines off-loaded passengers on a dock that the Cuban government had confiscated from Havana Docks in 1959. The district court consolidated the cases and on summary judgment ordered Defendants-Appellants to pay more than $436 million, including treble damages, to Havana Docks. *See* Dist. Ct. Doc. 544.[2] That judgment inflicts great harm on CLIA members. It also rests on an incorrect and expansive interpretation of liability and an extremely narrow understanding of "lawful travel" that, if left undisturbed, will threaten the entire cruise industry.

---

[2] All references to the district court docket are to case *Havana Docks Corp. v. Carnival Corp.*, 19-cv-21724-BB (S.D. Fla.), unless otherwise noted.

## ISSUE STATEMENT

Whether Defendants-Appellants' travel itineraries, which exposed passengers to the art, literature, and culture of Cuba, as encouraged by the federal government, were "lawful travel," because they provided a "full-time schedule of activities intended to enhance contact with the Cuban people" and resulted "in meaningful interaction between the traveler and individuals in Cuba." 31 C.F.R. § 515.565(b) (2016).

## INTRODUCTION AND SUMMARY OF ARGUMENT

On March 21, 2016, President Obama and President Raúl Castro held a historic press conference to celebrate the reopening of Cuba to American business and travel. After over 50 years of severely restricted travel between the United States and Cuba, President Obama declared that both governments were "moving ahead with more opportunities for Americans to travel to Cuba and interact with the Cuban people." The Obama White House, *Remarks by President Obama and President Raul Castro of Cuba in a Joint Press Conference* (Mar. 21, 2016), https://tinyurl.com/3shrn78x. Under changed regulations proposed by the Department of the Treasury, more Americans could travel to Cuba for educational purposes; airlines could begin direct commercial flights; and, President Obama announced, the

government had "removed the last major hurdle to resuming cruises" to Cuba. *Id.* All of this, President Obama declared, would mean "even more Americans visiting Cuba in the years ahead and appreciating the incredible history and culture of the Cuban people." *Id.*

To facilitate this sea change in American–Cuban relations, the Department of Treasury's Office of Foreign Assets Control (OFAC) issued revised regulations, known as the Cuba Assets Control Regulations (CACR), to set the bounds of lawful travel to Cuba. *See* 31 C.F.R. § 515.101. OFAC authorizes lawful travel to Cuba in two forms: a specific license, which OFAC can issue after receiving an application from a traveler seeking permission to take a particular trip to Cuba, or a general license, which OFAC can issue to authorize an entire class of travel. *See id.* § 591.306. To implement the President's landmark foreign policy program "to further engage and empower the Cuban people," 80 Fed. Reg. 2291, 2291 (Jan. 16, 2015), OFAC issued a general license permitting travel that included a "full-time schedule of activities" that was "intended to enhance contact with the Cuban people, support civil society in Cuba, or promote the Cuban people's independence from Cuban authorities" and that would "result in meaningful interaction[s] [with] individuals in Cuba." *See* 31 C.F.R.

- 4 -

§ 515.565(b) (2016). While "travel for tourist activities" was prohibited under the general license, 80 Fed. Reg. at 2291, travel that complied with OFAC's new general license now constituted lawful travel to Cuba.

The travel industry followed the federal government's lead. Cruise lines offered trips to Cuba that complied with OFAC's amended travel regulations. Their itineraries included excursions to Ernest Hemingway's home, to art museums, and to famous dance performances. And cruise lines were not the only groups to respond to the federal government's call. Groups like the Harvard Alumni Association, nonprofits, and several state bar associations all ran trips to Cuba that featured nearly identical itineraries to those of the cruise lines. Visitors on these trips learned about Cuba's rich culture and engaged with local Cubans around these activities. The government saluted these historic trips. President Obama celebrated the "individuals, firms, and nongovernmental organizations" who followed the administration's regulatory changes, noting the nearly doubling of air travel to Cuba and especially recognizing that "the first U.S. cruise liner visited Cuban ports in May 2016." The Obama White House, *Presidential Policy Directive—United States-Cuba Normalization* (Oct. 14, 2016), https://tinyurl.com/4u69x6yc. The amended regulations remained in place until 2017,

when the Trump Administration cut back on travel to Cuba by amending the regulations to require "people-to-people" travel to take place under the auspices of a U.S. organization that sponsors cultural exchanges. *See* 82 Fed. Reg. 51,998, 51,999 (Nov. 9, 2017).

Despite this fanfare from the highest echelons of government, and the clarity of OFAC's general license, plaintiff Havana Docks brought an expansive and novel suit against four cruise lines under the LIBERTAD Act. That Act allows persons whose property was confiscated by the Cuban government to bring an action against any person who "traffics in" confiscated property. 22 U.S.C. § 6082(a)(1)(A). But the Act excludes from liability any "transactions and uses of property incident to lawful travel to Cuba." 22 U.S.C. § 6023(13)(B)(iii). In Havana Docks' view, however, the Defendants-Appellants cruise lines had trafficked in confiscated property by offloading passengers on a dock in Havana that the Cuban government had confiscated in 1959. In defense, the cruise lines argued, among other things, that the LIBERTAD Act's exemption for lawful travel to Cuba immunized it from suit. But the district court disagreed, finding that the cruises' excursions—the very same kind offered by various organizations and

praised by the President—were not lawful travel. *See* Dist. Ct. Doc. 477, at 113-151 (SJ Op.).

The district court was wrong. The cruises' trips to Cuba were lawful travel under the amended OFAC regulations because they were intended to enhance contact with the Cuban people and resulted in meaningful interaction between passengers and Cuban people. They thus fell within the LIBERTAD Act's lawful travel exception.

1.    The cruise industry responded to the federal government's encouragement to open up travel to Cuba by offering cruises that exemplified American-Cuban cultural exchange and complied with the government's lawful-travel regulations. Reopening travel to Cuba was a cornerstone of President Obama's foreign policy agenda. The President traveled to Cuba to announce the changes, touted the new regulations in a historic press conference and during his final State of the Union address, and issued a press release celebrating the arrival of the first cruise ship to Cuba. Far from skirting any regulations, the cruise industry followed the federal government's lead in setting sail for Cuba.

2.    The cruise lines complied with the revised OFAC regulations by offering itineraries packed with various activities that immersed travelers in

Cuban culture, from art, to music, cuisine, and dance. These trips constituted lawful travel to Cuba under 31 C.F.R. § 515.565(b) (2016) because they were intended to enhance contact with the Cuban people and resulted in meaningful interaction between passengers and Cubans. The district court's contrary conclusion rested on an atextual, cramped reading of the lawful-travel regulation. Rather than analyzing whether the "schedule of activities" as a whole was intended to enhance contact with the Cuban people, as the regulation requires, the district court scrutinized each individual activity on the itinerary. The regulation does not call for that analysis, and the examples of lawful itineraries OFAC provided when promulgating the regulations confirm that the district court's approach was wrong. Letting the district court's interpretation of the lawful-travel regulation stand risks chilling international travel should the United States reopen travel to Cuba or other countries.

3.    The district court's activity-by-activity analysis of the cruise lines' itineraries would mean that no travel to Cuba during the period the regulations were in place was lawful. Groups ranging from the Colorado Bar Association to the Metropolitan Museum of Art organized trips to Cuba in this period with itineraries that are glaringly similar to the cruises'. These

trips were lawful travel to Cuba for the same reason that the cruises were lawful travel to Cuba. The district court's opinion below was wrong and should be reversed.

## ARGUMENT

### I.    The cruise industry followed the lead of the United States government in offering travel to Cuba.

At every stage of the regulatory process that relaxed travel to Cuba, the Obama Administration encouraged the cruise industry to sail to Cuba. In turn, cruise lines followed every requirement to sail to Cuba. And after the cruise lines had completed trips, the government celebrated their historic journeys.

**A.**    In 2014, the Obama Administration announced that, as part of a sweeping and historic change in the United States' relationship with Cuba, the United States would make it "easier for Americans to travel to Cuba." The Obama White House, *Statement by the President on Cuba Policy Changes* (Dec. 17, 2014), https://tinyurl.com/9jfhzjds. "Nobody represents America's values better than the American people," President Obama observed, explaining that contact between Americans and Cubans "will ultimately … empower the Cuban people." *Id.* And when the government

announced the lawful-travel regulations, the White House issued a statement that "[t]he President is taking steps to improve travel and remittance policies that will further increase people-to-people contact, support civil society in Cuba, and enhance the free flow of information to, from, and among the Cuban people." The Obama White House, *Charting a New Course on Cuba*, https://tinyurl.com/mpmyywam. The White House praised the increased travel that would result, because "[w]ith expanded travel, Americans will be able to help support the growth of civil society in Cuba more easily, and provide business training for private Cuban businesses and small farmers. Americans will also be able to provide other support for the growth of Cuba's nascent private sector." *Id.*

President Obama celebrated the historic regulations in his 2016 State of the Union Address: "Fifty years of isolating Cuba had failed to promote democracy, and set us back in Latin America. That's why we restored diplomatic relations [and] opened the door to travel and commerce, positioned ourselves to improve the lives of the Cuban people." The Obama White House, *Remarks of President Barack Obama – State of the Union Address As Delivered* (Jan. 13, 2016), https://tinyurl.com/3x73zmzt. So did Benjamin Rhodes, the Deputy National Security Advisor: "We have enormous

confidence in the American people as ambassadors. … There's no shortage of opportunities for Americans to build that type of meaningful schedule of people-to-people engagement while they go to Cuba. We believe that's the best way to connect the Cuban people with the wider world." J. Davis, *U.S. Eases Restrictions on Travel to Cuba and Bank Transactions*, N.Y. Times, March 15, 2016, https://tinyurl.com/2fctw4vy.

Just a few months after the State of the Union, President Obama took a historic trip to Cuba, where he continued to encourage the cruise industry to sail to Cuba. President Obama told a joint American-Cuban press corps that the two countries were "moving ahead with more opportunities for Americans to travel to Cuba and interact with the Cuban people." The Obama White House, *Remarks by President Obama and President Raul Castro of Cuba in a Joint Press Conference*. The President announced that his administration had "removed the last major hurdle to resuming cruises and ferry service," and that, as a result of the amended regulations, "even more Americans [will] visit[] Cuba in the years ahead and appreciat[e] the incredible history and culture of the Cuban people." *Id.*

**B.**    Before setting sail to Cuba, the cruise industry followed the amended regulations to the letter. Each of the Defendants-Appellants cruise

lines sought specific licenses from OFAC for their trips to Cuba. In response, OFAC informed them that their trips were covered by the general license, so a specific license was not required. (Carnival had applied for, and received, a specific license before OFAC's general license regime went into effect. *See* Dist. Ct. Doc. 326-35.) And several of the cruise lines required its passengers to swear by affidavit that they were traveling to Cuba with the intent to engage in people-to-people travel. *See* SJ Op. 50, 63.

After Carnival docked the first cruise ship to sail to Cuba under the changed regulatory regime, the Obama Administration celebrated the landing, issuing a statement recognizing "the first U.S. cruise liner" to visit a Cuban port. The Obama White House, *Presidential Policy Directive – United States-Cuba Normalization*. Approving of the cruises that had set sail to date, the Administration promised to "continue to encourage people-to-people linkages through government and privately sponsored exchanges, including those involving educational, cultural, business, science, environment, technology, and sports." *Id.* Thus, the Administration pledged to "continue to support the development of scheduled and chartered … maritime links." *Id.*

**II.    The cruise excursions were intended to enhance contact with the Cuban people.**

It is little wonder that the federal government encouraged, praised, and promised to continue supporting the cruise industry's travel to Cuba. The cruise industry organized itineraries exposing travelers to a rich array of Cuban culture and affording many opportunities for Americans to interact with Cubans. That's exactly why those itineraries satisfied the lawful travel regulation—they were intended to enhance contact with the Cuban people, and they resulted in meaningful interactions between Americans and Cubans. *See* 31 C.F.R. § 515.565(b) (2016). The cruise lines' itineraries took travelers to museums, on guided tours of famous architectural and literary sites, and to artist colonies.

The district court's contrary conclusion misread the regulation. The text of the regulation requires an inquiry into whether the "full-time schedule of activities" is intended to "enhance contact with the Cuban people." *Id.* The subject of the inquiry is the "full-time schedule," not each individual activity on the itinerary. The examples given by OFAC in its regulations confirm that the inquiry must be holistic. Concluding otherwise would lead to absurd results.

### A. The cruise itineraries were lawful travel under 31 C.F.R. § 515.565(b).

The cruise trips satisfied the lawful-travel regulation because they provided a "full-time schedule of activities intended to enhance contact with the Cuban people." *Id.* § 515.565(b)(2). The regulation also requires each traveler to have "a full-time schedule of educational exchange activities that will result in meaningful interaction between the traveler and individuals in Cuba." *Id.* The text of each of those provisions requires an examination of the itinerary *as a whole*. Both provisions focus on the "full schedule," not each individual activity on the schedule. Thus, travel is lawful if the itinerary, in its entirety, is intended to promote contact with the Cuban people and will result in meaningful interactions between travelers and Cubans.

The examples of lawful travel provided by OFAC during the rulemaking process confirm that reading. In one example, OFAC described a hypothetical trip in which Americans traveled to Cuba to volunteer with an organization building schools in Cuba. "In their free time, the travelers plan to rent bicycles to explore the streets of Havana and visit an art museum." 82 Fed. Reg. at 52,003. OFAC advised that this trip "would qualify for the general license" because the trip would "constitute a full-time

schedule that enhances contact with the Cuban people … and results in meaningful interaction between the travelers and individuals in Cuba." *Id.* OFAC did not parse each aspect of the trip individually, but focused on the itinerary as a whole.

Under that standard, the cruise itineraries were lawful travel. Take one sample cruise itinerary. One of the days, "The Best of Havana," included a tour of "El Cristo" (a 55-foot-tall statute of Christ) and a tour of a historic fort, followed by a visit to a historic cemetery and the Plaza de la Revolución. Dist. Ct. Doc. 311-38, at 12. After lunch at a local Cuban restaurant, passengers visited the "Fusterlandia mosaic playground," a community cultural arts complex where passengers met with local artists. *Id.* The day concluded in the Plaza de la Catedral, an active Cuban plaza. *Id.*

Another sample itinerary, "Flavors & Traditions of Havana," introduced passengers to other aspects of Cuban culture. First, guests began with a "traditional Cuban meal" where a local guide told the history of Cuba through the lens of the country's agriculture and cuisine. *Id.* at 16. Passengers then visited a plaza to learn about famous Cuban poet José Martí, followed by a trip to "Muraleando," a local art space and community center where

passengers could meet local artists. *Id.* The day ended with a live performance. *Id.*

Assessed as a whole, itineraries like these were intended to enhance contact with the Cuban people. The itineraries introduced passengers to the religion, cuisine, arts, music, and architectural history of Cuba. In other words, the trips exposed passengers to core facets of Cuban culture, just as a visitor to France may gain an appreciation of French culture by taking a guided tour of the Louvre, eating at a local café, or attending a cabaret performance at the Moulin Rouge. Visitors who spend a full day embarking on such activities enhance their contact with locals, even if not every minute of every activity involved dialoguing with a local. In the cruise itineraries, passengers interacted with Cuban artists and could interact with other Cubans while in the historic plazas where the tour began and concluded. Viewed in total, a day of museum tours, artist workshops, dance performances, and local cuisine undoubtedly enhances contact between cultures.

B.     **The district court's contrary conclusion rests on a flawed interpretation of the regulations.**

Despite the cross-cultural contact at the center of the cruise lines' itineraries, the district court concluded that those itineraries were not lawful travel under 31 C.F.R. § 515.565(b) (2016). In reaching that conclusion, the district court failed to examine the itineraries' "schedule of activities" and instead looked activity-by-activity, asking whether each activity involved direct interaction between passengers and Cubans. That was error. The regulation calls for a holistic inquiry into the "full-time schedule of activities" to determine whether they are "intended to enhance contact with the Cuban people." *Id.* § 515.565(b)(1) (2016).

Consider the district court's approach to one cruise line's "Hemingway's Havana" itinerary. The tour includes "travel by bus to Hemingway's former home," a guided tour of the fishing town Cojimar (the inspiration for *The Old Man and the Sea*), and a visit to a local community to engage "with local Cubans working to improve their communities." SJ Op. at 122 (citations omitted). In the district court's view, *only* that last tour stop constituted lawful travel. *Id.* at 123. The district court failed to recognize that a visit to the home of one the world's most famous authors associated with

- 17 -

Cuba and a guided tour of the town that inspired that author's Pulitzer Prize winning novel could enhance contact with the Cuban people.

Taken to its logical conclusion, the district court's interpretation would find unlawful an itinerary that included a rest stop for passengers to use the bathroom, or one that provided a stop for lunch, or one that required a ten-minute bus ride from activity to activity. After all, none of those activities involve direct dialogue with Cuban people. It would be impossible to construct an itinerary that complies with the district court's interpretation of the regulation, and the regulation does not call for such a detailed examination of each activity in any event. Viewed properly, the cruise itineraries complied with the lawful travel regulation.

### C. Left undisturbed, the district court's decision will chill the very travel to Cuba and interaction between Cubans and Americans that the regulations were intended to promote.

The district court's unworkable interpretation of the lawful-travel regulation sends an ominous message to both the cruise industry and the broader travel industry that responding to the federal government's encouragement can lead to massive liability.

Beginning in 2014, the federal government touted a new foreign policy toward Cuba. Indeed, President Obama made it a centerpiece of his legacy.

The administration encouraged cruise lines to play a historic role in bringing Cuba and the United States together, and then celebrated the cruise industry when it complied with the new regulatory regime and proudly played a role in this history.

Unless this Court corrects the district court's error, the cruise industry—and the travel industry in general—is unlikely to play such an eager partner again. Of course, the lawful-travel regulation was amended under the Trump Administration; it is uncertain where the next historic thawing of relations will come, and what regulatory regime may govern travel. But the district court's decision casts a shadow over the cruise industry's participation in historic foreign policy. And parts of the lawful-travel regulation—including the language permitting travel (which now must take place under the auspices of particular organizations, *see* 31 C.F.R. § 515.565(b)(1))—remain in effect. Thus, organizations planning travel to Cuba face the threat of onerous liability under the district court's flawed interpretation. Unless corrected, the court's atextual, cramped reading of the lawful travel regulation—particularly when set against the broad, sweeping pronouncements celebrating cruise travel by the federal government—will be a cautionary tale for the industry going forward.

- 19 -

That chilling effect has real, and unfortunate, consequences. As the federal government recognizes, increased travel between America and the world benefits both Americans and the entire globe. *See* The Obama White House, *Presidential Policy Directive — United States-Cuba Normalization*. Unless the travel industry can be sure that helping bring the world together does not come with treble damages amounting to a more-than $400 million price tag, travel to Cuba may remain extremely limited no matter what assurances the federal government offers.

## III. Cruise lines offered the same excursions offered by bar associations, universities, and professional groups.

The approach of the travel industry as a whole underscores the wrongheadedness of the district court's decision. Although the district court's opinion may leave the impression that cruises were the only travel companies offering trips to Cuba, a wide range of groups, also encouraged by the federal government, traveled to Cuba with similar itineraries under the OFAC regulations in place between 2015 and 2017. For example, bar associations, university alumni groups, museums, and nonprofits all developed itineraries filled with visits to artists' colonies, museums,

architecture tours, and live performances. But under the district court's interpretation of § 515.565(b), *none* of those trips were lawful.

Recall the "Best of Havana" itinerary. The Harvard Alumni Association organized a trip to Cuba in 2017 with a remarkably similar itinerary. Harvard alumni went on a walking tour of Old Havana; traveled to artist Jose Fuster's "Fusterlandia," where they met with artists; took in a performance "by a local stomp band"; and ate at a traditional restaurant for dinner. Harvard Alumni Association, Travels 2017: ¡Cuba!, https://tinyurl. com/bdenp5kn. This trip would also fail the district court's flawed interpretation of the lawful travel regulation; only the Fusterlandia component, viewed in isolation, would count as lawful travel. On the district court's view, the rest of the activities would not count, the trip would have been unlawful, and the Alumni Association would be liable under the LIBERTAD Act for any incidental use of property that had been confiscated.

The Colorado Bar Association would also be liable under the district court's interpretation. Its 2017 trip to Cuba featured a day in Havana including a walking tour of Havana's plazas, a lecture about Cuba's history, lunch in a local restaurant, and an orchestral performance in the evening. Colorado Bar Association, Journey to Cuba: A Cross-Cultural Educational

Exchange, January 29 – February 2, 2017, https://tinyurl.com/3b359p89. Picking apart that itinerary with the district court's flawed methodology would mean that the trip was unlawful.

Finally, consider the Fulbright Association's 2017 tour to Cuba. One of the days included a visit to a garden and then a visit of Ernest Hemingway's home, followed by lunch and a tour of Old Havana's plazas. Fulbright Association, February 2017 Insight Tour to Cuba, https://tinyurl.com/5dc2rpyx. By the district court's logic, the Fulbright Association engaged in unlawful travel and would thus be subject to damages for trafficking in any confiscated property.

The list goes on. In addition to the Harvard Alumni Association, the Colorado Bar Association, and the Fulbright Association, other groups traveled to Cuba under the 2015 OFAC regulations and engaged in nearly the same important cultural activities that cruise passengers engaged in, including the Contra Costa County Bar Association (Journey to Cuba: A Cross-Cultural Educational Exchange, February 18-24, 2017, https://tinyurl.com/5yww2x94), University of Pennsylvania Alumni Travel (Discover 2017: Explore Cuba, February 18-25, https://tinyurl.com/3j2hpu5u), Lewis and Clark College Alumni (Cuba: Art, Music, and Cultural Creativity in the 21st

Century, May 7-14, 2017, https://tinyurl.com/hvwfh4wm), the University of Wisconsin-Milwaukee's Osher Lifelong Learning Institute (Cuba: Art, Culture, History, Politics and Economics, November 27-December 4, 2017, https://tinyurl.com/tr8a8vjz), the Metropolitan Museum of Art in New York (The Art & Architecture of Cuba: A New Year's Celebration, https://tinyurl.com/22eak6kn), and the Flying Physicians Association (Cuba: A Trip Back in Time, at 16-19, https://tinyurl.com/5yst2u6f).

It is no coincidence that each of these trips converged on extremely similar itineraries. Nearly all these groups partnered and interacted with a small group *of Cuban companies* to organize OFAC-compliant itineraries fulfilling the foreign policy goals set out at the highest level of the federal government. Many of the groups advertised that they contracted with the same Cuban company as the cruise lines to develop itineraries. *See, e.g.*, Cuba: A Trip Back in Time, at 16. There is no more reason to think that the cruise industry deserves a $400 million punishment for answering the federal government's call than there is to think that any of these other groups violated the law. The cruise lines are some of many groups that worked with the federal government to embrace a new era of relations with Cuba. They

complied with the relevant regulations and offered enriching culture-focused trips to Cuba. The district court was wrong to conclude otherwise.

## CONCLUSION

The Court should reverse the judgment of the district court.

Dated: July 7, 2023

Respectfully submitted,

*/s/ Shay Dvoretzky*

Shay Dvoretzky
  *Counsel of Record*
Parker Rider-Longmaid
Steven Marcus
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
Telephone: 202-371-7000
shay.dvoretzky@skadden.com

Timothy G. Nelson
SKADDEN, ARPS, SLATE
  MEAGHER & FLOM LLP
New York, NY 10001

*Counsel for Amicus Curiae Cruise Lines International Association*

## CERTIFICATE OF COMPLIANCE

Pursuant to Federal Rule of Appellate Procedure 32(g), I hereby certify that this corrected brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 29(b)(4) because, as calculated by Microsoft Word, it contains 4,571 words, excluding the parts of the brief exempted by Federal Rule of Appellate Procedure 32(f). I also certify that this brief complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5) and (a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in a 14-point Book Antiqua font.

Dated: July 7, 2023               */s/ Shay Dvoretzky*
                                  Shay Dvoretzky

                                  *Counsel for Amicus Curiae*
                                   *Cruise Lines International*
                                   *Association*

## CERTIFICATE OF SERVICE

I hereby certify that on July 7, 2023, I electronically filed this brief with the Clerk of the Court for the United States Court of Appeals for the Eleventh Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

Dated: July 7, 2023

Respectfully submitted,

*/s/ Shay Dvoretzky*
Shay Dvoretzky
SKADDEN, ARPS, SLATE,
  MEAGHER & FLOM LLP
1440 New York Ave., NW
Washington, DC 20005
202-371-7000
shay.dvoretzky@skadden.com

*Counsel for Amicus Curiae*
  *Cruise Lines International*
  *Association*